IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA DEL PILAR GONZALEZ-LOPEZ,

    Plaintiff,

        v.

CIGNA GROUP INSURANCE, CIGNA CORPORATION, LIFE INSURANCE COMPANY OF NORTH AMERICA, ET AL.,

    Defendants.

CIVIL NO. 08-1294 (JAG/CVR)

# OPINION AND ORDER ON RECONSIDERATION

## INTRODUCTION

Plaintiff María del Pilar González López (hereafter "plaintiff González-López") filed an Amended Complaint arising under the Employment Retirement Income Security Act ("ERISA"). Title 29, United States Code, Section 1001 *et seq.* (*Docket No. 18*).

Defendants were Cigna Group Insurance ("CIGNA"),[1] Life Insurance Co. of North America ("Life Insurance") and Interamerican University of Puerto Rico ("Interamerican University"), in relation to the denial of long term disability benefits under the disability benefits plan of plaintiff González-López while employed in her regular occupation as a security inspection guard at the Interamerican University.

The instant action seeks review of the denial of benefits to plaintiff González-López on March 18, 1998, which is considered wrongful, unreasonable, contrary to the evidence under the terms of the disability plan and the relevant law and in violation of ERISA provisions.

---

[1] The court had already dismissed claims as to defendant CIGNA, including CIGNA Group Insurance and CIGNA Corporation for being the first a service mark and not a legal entity and as to the second for lack of jurisdiction. (*Docket Nos. 31, 32*).

The parties consented to proceed before a United States Magistrate Judge. (*Docket No 56*).

## BACKGROUND

Plaintiff González-López originally filed this action in a state court of the Commonwealth of Puerto Rico. Defendants removed same to this federal court being regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"), and thus having federal original subject matter jurisdiction. Title 28, United States Code, Sections 1331, 1441(a).

Plaintiff González-López' claims stem from denial of long term disability benefits upon becoming disabled to perform her regular occupation. The initial application for long term benefits was denied. Plaintiff avers that, after filing an appeal with co-defendant Life Insurance back on July 31, 1998, non-receipt of disposition over same within the sixty (60) days, subsequent follow-up yearly to no avail, she retained legal representation on February of 2005. Defendant then proposed to counsel for plaintiff in reply to a letter that all files were retained solely for up to six (6) years, indicating having no records as to plaintiff's review and/or appeal. However, plaintiff González-López had continued making monthly payments to the insurance plan through Interamerican University since June 1997 through the year 2005, received no answer to her appeal, and considers having exhausted her administrative remedies.

Defendants requested the case be ordered removed from ordinary civil proceedings so that judgment be issued on the administrative record in lieu of summary judgment. The administrative record was then filed and the certified translation of all documents were submitted. *(Docket Nos. 59, 66)*.

Plaintiff González-López filed an opposition to judgment as a matter of law requested by defendants. (Docket No. 67). Defendants have requested to have the opposition stricken on May 26, 2009. (Docket No. 68). The motion to strike is DENIED.

On June 16, 2009, this Court issued an Opinion and Order denying defendant's Motion for Judgment as a Matter of Law. (Docket No. 71). On June 24, 2009, defendant filed for reconsideration. (Docket No. 72). Plaintiff has failed to address the same.

Having reviewed the arguments presented by defendant on reconsideration, with specific reference to the record and the corresponding case law, this United States Magistrate Judge now determines as follows, reiterating the relevant statements of the case.

### LEGAL DISCUSSION

**A. Standard Judgment as a Matter of Law based on the Administrative Record.**

Defendants have submitted the plan administrator for Interamerican University, Life Insurance, had the discretionary authority to interpret the terms under the long term disability plan and to determine eligibility for benefits.

The Supreme Court sets out in Firestone Tire & Rubber Co. V. Bruch,[2] the appropriate standard of judicial review when dealing with trust law of an ERISA plan that entails when considering a benefit determination under a fiduciary plan. When a plan provides to the administrator of said plan a discretionary authority to determine eligibility, a deferential standard of review is to be considered. Firestone, 489 U.S. at 115, 109 S.Ct. at 948.

Plaintiff González-López argues the matter raised in her Amended Complaint should be subject of a regular bench trial and not summarily disposed. The Amended Complaint

---

[2] 489 U.S. 101, 109 S.Ct. 948 (1988).

María del Pilar González López v. CIGNA, et al
Civil No. 08-1294(JAG/CVR)
Opinion and Order
Page No. 4

_____

and the averments in the opposition also seek civil penalties for defendant Life Insurance having failed to act under the appropriate ERISA standard when never answering the appeal filed, misplacing the administrative record, and upon failing to properly notify plaintiff González-López as required by its obligations under ERISA. (Docket No. 67).

We are dealing herein with an ERISA determination under the disability plan and the request for judicial action insofar as the initial denial of benefits requested by plaintiff González-López under a long term disability plan.

On one hand, a judgment under matter of law should view the evidence in the light most favorable to the non-moving party. *See* Monteagudo v. Asociacion de Empleados del ELA, 554 F.3d 164 (1st Cir. 2009). It may only be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the non-moving party, the record reveals no sufficient evidentiary basis in support of the judgment requested. As such, the motion for judgment as matter of law is properly granted when the evidence and inferences drawn therefrom, viewed most favorably to the non-movant, permit only one reasonable conclusion. *See* Resare v. Raytheon Co., 981 F.2d 32, 34 (1st Cir. 1992). In this analysis, one may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. Leclaire v. Blackstone Valley Elec. Co., 104 F.3d 348 (1996)(*Table*), *citing* Wagenmann v. Adams, 829 F.2d 196, 200 (1st Cir. 1987).

On the other hand, when dealing with ERISA claims in this kind of actions, when a plan administrator has discretion to determine eligibility for and entitlement to benefits, a district court must uphold the administrator's decision unless it is arbitrary, capricious, or an abuse of discretion. Gannon v. Metro Life Ins. Co., 360 F.3d 211, 212-13 (1st Cir. 2004). For said reason, as well as based on the criteria that a non-moving party in an

ERISA case is not entitled to the usual inferences in its favor, defendant has moved for reconsideration of the previous determination denying judgment on the pleadings.

Still, a non-movant's evidence must comprise more than fragmentary tendrils: a mere scintilla of evidence is not enough to forestall a judgment as a matter of law, especially on a claim or issue as to which the burden of proof belongs to the objecting party. Fashion House, Inc. V. K-Mart Corp., 892 F.2d 1076, 1088 (1st Cir. 1989). Non-movant may not rely on conjecture or speculation, evidence offered must make the existence of the fact to be inferred more probable than its nonexistence. *See* Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992) (*quoting* Carlson v. American Safety Equip. Corp., 528 F.2d 384, 386 (1st Cir. 1976).

**B. Administrative Review.**

First, insofar as the disability determination, defendants submit the Amended Complaint contains date of November 26, 1996, as on-set date of disability although plaintiff González-López continued to work until November 26, 1997. Even if such initial date is considered a clerical mistake, defendants argue plaintiff must have been disabled by June 12, 1997, the last day she had worked for Interamerican University. If the date of November 26, 1997, is considered as amended on-set date of disability, there still would be a six-month period delay since plaintiff's last work day, for which her status as a covered employee must have been November 26, 1997, the last date of work, that would entitle her to disability benefits under the plan. (Docket No. 59).

Secondly, defendants further submit the administrative file fails to support a total disability finding, as properly issued by the administrator when denying González-López' initial claim. Upon claimant's non-compliance with her burden of proof to present medical

evidence sufficient to establish that she was totally disabled under the terms of the long term disability policy, under this judicial review the administrative determination should stand.

Nevertheless the existence of discretionary power on the trustee under the plan, a court may exercise with limitation equity considerations when reviewing the exercise of these powers, so as to avoid arbitrary and capricious determinations when denying benefits, the presence of mistake or misunderstanding in the exercise of same, or upon an abuse of discretion. *See* G. Bogert & G. Bogert, *The Law of Trust and Trustees* §560.

**1. The Plan.**

A disability Income Policy was issued by co-defendant Life Insurance for the benefit of employees of Interamerican University. Plaintiff González-López was employed by Interamerican University and was a beneficiary of the policy. Plaintiff González-López claimed disability due to physical and mental condition and requested disability benefits from Life Insurance that was denied.

The disability plan at issue provides long term disability benefits to eligible employees who are considered disabled due to sickness or injury. Disability is defined and shall be provided upon (1) inability to perform all the material duties of the regular occupation; and (2) after monthly benefits have been payable for twenty four (24) months, claimant is unable to perform all the material duties of any occupation for which he/she may reasonably become qualified based on education, training or experience. *Disability Plan, Docket No. 59-2 , Exhibit A, p. 5.*

**2. Administrative Process and Evidence Presented.**

Defendants submit the following statement of facts as applicable to this action.

1) The disability plan provides for insurance coverage to end the date the employee's active service ends, unless such active service ends due to disability, in which case the insurance will continue during the benefits waiting period and thereafter for as long as monthly benefits are payable for disability or residual disability. *Exhibit A, p. 8.*

2) An employee is to be considered in "active service" on a day which is one of the employer's work days if he/she is performing in the usual way all the regular duties of his/her work for the employer on a full time basis on that day, either at one of the employer's usual places of business or at some location to which the employer's business requires him/her to travel. *Id. p. 3.*

3) Plaintiff's employer and job description indicated her job was sedentary, required 80% sitting, 5% standing, and 15% walking. *Exhibit C, Part 3, pp. 122, 123, 133.*

4) Plaintiff claimed information provided by the employer is not accurate. She alleged the job required 85% standing and walking. *Id., Part 1, p. 31, note dated 2/23/98.* Based on plaintiff's activity reports for the period of July 1, 1996 up to June 30, 1997, plaintiff's job as reported by Interamerican University was found to be 79% sedentary and 21% standing and walking. *Id. p. 57.*

5) Plaintiff was treated by Dr. José Villanueva, a psychiatrist, as of November 16, 1996. *Exhibit C, Part 2, p. 79.* Monthly visits were reported from November 1996 up to November 1997. Plaintiff never visited Dr. Villanueva more than once a month even during June of 1997 when she claims total disability to have begun. *Id. pp. 84-85, Part 4, p. 158.*

6) Dr. Villanueva's record shows plaintiff's medical history to include neurodermatitis condition she complained since the year 1994. At that time, plaintiff

reported blisters in hands and feet which developed in ulcers causing swelling and/or edema. These episodes were reported as lasting around two weeks.

Dr. Villanueva informed all medical tests came back negative and the State Insurance Fund's ("SIF") physician related the condition with anxiety. Plaintiff also reported having problems at work with her supervisor. *Exhibit C, Part 2, pp. 79-80, 81, 82-83.*

7) On April 7, 1997, plaintiff had a confrontation with her supervisor which apparently triggered a neurodermatitis episode. She was referred to the SIF and returned to work on April 11, 1997. On May 20, 1997, she visited Dr. Villanueva indicating she was being audited and her supervisor telling her job was at stake. *Id. p. 84.*

8) On June 24, 1997, plaintiff visited Dr. Villanueva again referring to an order of the SIF's physician for rest and therapy on June 12, 1997. Plaintiff informed the lesions on her hands and feet had disappeared since she left work on June 12, 1997. *Id. p. 85.*

9) Dr. Villanueva's notes for July 15, 1997, refers to plaintiff's supervisor being fired. Plaintiff is reported as being happy and having filed a complaint against the Interamerican University. The hands and feet were in perfect condition and her dermatologist had discharged her. Plaintiff was concerned of retaliation for having filed the complaint. *Exhibit C, Part 2, p. 85.*

10) On August 12, 1997, plaintiff reported to Dr. Villanueva being anxious and upset for the person appointed as her supervisor, if she returned to work, Mr. Jaime Casanova, was not nice to her. The lesions had reappeared. She had been alright up to August 8, 1997, before being informed of the supervisor's appointment. *Id. p. 86.*

11) Plaintiff's neurodermatitis continued during September 1997. She was hospitalized on October 6-9, 1997, and November 10-21, 1997, due to an abscess in her right foot. *Id. pp. 86-87.*

12) The record at the SIF shows plaintiff was seen for her condition on July 31, 1996, and worked while receiving treatment from April 11, 1997 through June 11, 1997, when she was discharged from her neurodermatitis condition. She was to continue receiving treatment while working for her emotional condition. Plaintiff returned to the SIF on June 13, 1997 and was ordered rest for the emotional condition. She did not return to work. Exhibit C, Part 3, pp. 124-128.

13) Life Insurance's medical consultant reviewed the medical evidence and did not find a condition severe enough to preclude plaintiff from performing her job. *Administrative File, Part 1, p. 58.*

14) Dr. Juan Felix' report, plaintiff's orthopedist, described plaintiff's condition on February 6, 1998, without providing office notes. Plaintiff indicated about an encounter with the supervisor in relation to her work duties, feeling nervous and anxious and being referred to the SIF upon developing water blisters in her hands and feet. *Exhibit C, Part 2, p. 62; Administrative File, Part 2, p. 62.* Dr. Felix described plaintiff's condition after October 1997 and up to the date of the report. *February 8, 1998. Id. pp. 63-67.*

15) On April 8, 1997, Dr. Felix saw plaintiff for the first time, then on May 12, 1997, and on June 26, 1997. *Exhibit C, Part 4, p. 161.*

16) On March 18, 1998, Life Insurance denied long term disability benefits to plaintiff. The decision listed the medical data evaluated. No condition was found back in

June 12, 1997 severe enough to preclude plaintiff from performing the duties of her occupation. *Exhibit C, Part 1, pp. 47-49.*

17) Life Insurance informed plaintiff of the right to file an appeal within sixty (60) days after receipt of the letter. *Id. p. 48.* Plaintiff claimed to have file her appeal on or around July 31, 1998. *Deft's Statement ¶23, Docket No. 22.*

18) Two notes appear on file dated September 26, 2002 and October 28, 2002, wherein plaintiff claimed to have filed an appeal and never receiving the decision on appeal. *Exhibit C, Part 1, pp. 40, 44.* Plaintiff was advised to resend the appeal with a letter explaining the situation. *Id. p. 40.*

19) On February 17, 2005, plaintiff's attorney wrote to CIGNA inquiring about the status of the appeal. *Id. p. 38.* Life Assurance's case manager, Ms. Maggie Torres, responded to the letter indicating the long term disability file "may have been already destroyed." Plaintiff was asked to provide the names of the persons with whom she had communication on the matter. *Id. p. 36.* No additional communication was received from plaintiff González-López until she filed this federal action on January 18, 2008.

Plaintiff's opposition to defendants' motion for judgment as a matter of law provides:

Plaintiff González-López had not worked in her duties as Security Officer and Health Occupational Inspector with the Interamerican University since June 1997, but she continued making insurance monthly payments until 2005.

Plaintiff was officially declared disabled from performing the substantial duties of her regular occupation on October 1997 and on April 18, 1997, she was granted disability by the Social Security Administration becoming entitled to receive monthly disability benefits starting on February 1998.

From Life Insurance's own documents, it is admitted there was a need to confirm the patient's job position requiring 85% of her job performance to stand and walk, but the person who could verify this information was unavailable. The administrative record also shows a note indicating the medical records were in Spanish and difficult to read. Still, defendant denied benefits to plaintiff.

There is medical evidence plaintiff was under treatment from June 13, 1997 at the SIF, where she was ordered to rest, but was still an employee of Interamerican University. From 1997 until 1998, plaintiff González-López was receiving treatment. By February 1998, record of the SIF showed plaintiff to be suffering from an anxiety disorder and abscess right big toe, related to her job.

Plaintiff submitted a claim to Life Insurance for long term disability, which was denied on March 18, 1998, when CIGNA Group Insurance send a letter to plaintiff denying benefits claiming she was not disabled from her regular occupation.

Plaintiff González-López submits she filed an appeal of the denial of disability benefits to Life Insurance by July 31, 1998. On August 26, 1998, CIGNA wrote to plaintiff acknowledging plaintiff's appeal and informing the file was forwarded to the Appeals Review Team for consideration.

Plaintiff received no response whatsoever to her appeal. González-López claims denial of benefits of March 18, 1998, was wrongful, unreasonable, irrational, contrary to the evidence, and contrary to the terms of the Plan and the law. Thus, plaintiff submits there are material facts in controversy that would not allow judgment as a matter of law, that may

establish entitlement to filing this ERISA claim, and that such claim be addressed by a regular bench trial.³

In addition to the review of the denial of disability benefits as being unsupported and contrary to the Plan and the law, plaintiff submits there is a genuine controversy on whether Life Insurance infringed its ERISA duties when handling plaintiff's claim and appeal, in failing to answer the claim and in violating the notice requirements. To this end it is submitted Life Insurance misplaced plaintiff's administrative appeal, made no final determination thereunder, failed to fulfill its obligations under ERISA, for which it should be subject to civil penalties under Section 502(c), Title 29, United States Code, Section 1132(c).⁴

The Administrative Record submitted by defendant although scant reveals the job occupation of plaintiff González-López required at least 85% standing and walking since she was responsible as a security/safety guard/inspector to walk through different campuses in Puerto Rico of the Interamerican University to verify compliance with OSHA requirements. In fact, the record indicated a need to verify the job description but were unable to do so since the person was unavailable for being sick and there is no additional indicia in the record of any follow-up to seek the information. There is an annotation

---

³ On some occasions plaintiff argues the opposition to defendants' motion for judgment as a matter of law as a summary judgment motion wherein the record must be viewed in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. However, plaintiff failed to meet the requisite to oppose a motion for summary judgment under Fed.R.Civ.P. 56 and the local rules by not including a statement of material facts in controversy or specific references to the record. Since defendant has, at all times requested judgment as a matter of law, plaintiff's omissions were initially not considered detrimental. Still, the non-movant's consideration are not applicable to ERISA cases for which in the absence of an arbitrary or capricious decision the evidence on the administrative record would be determinative of defendant's contention.

⁴ Defendant clarifies the Amended Complaint in this case does not include a claim under Section 502 nor 503 in regard to civil penalties.

showing that, if the job description was accurate, the claim submitted by plaintiff was payable since she would not be able to walk which was a requisite of her current job. Additional annotations revealed there was medical evidence indicating infected abscess of the foot and dermatitis. Another annotation on the record revealed they were unable to assess the handwritten medical notes submitted by the physician for being difficult to read and in Spanish, without any notice to claimant as to said difficulty, attempt to obtain a legible note or clarification or translation sought.

As to the above, defendant submits that on March 3, 1998, follow-up was conducted to verify plaintiff's duties and her job description wherein a case manager held a conference with Mr. Jaime Casanova and Mrs. Mildred Vélez to provide information based on plaintiff's activity reports for the period of July 1, 1996 up to June 30, 1997. *Exhibit C, Part 1, p. 57*. In addition, defendant submits the fact that the administrative record shows a note that it was difficult to read and in Spanish does not mean it was not understood or that clarification was not sought. The latter is but plaintiff's conclusion while the evidence rather indicates a full examination of the available medical evidence was conducted when denying benefits. It included review of the bone scan and the bone flow dated October 27, 1997, medical record from the SIF, the narrative provided by Dr. Juan Felix dated February 8, 1998, a gallium scan dated October 28, 1997 and office notes provided by Dr. Villanueva. *Exhibit C, Part 1, p. 47*.

Plaintiff has filed no opposition whatsoever to defendant's request for reconsideration and as such failed to address the administrative record and the findings in support of defendant's request.

María del Pilar González López v. CIGNA, et al
Civil No. 08-1294(JAG/CVR)
Opinion and Order
Page No. 14

---

   In the instant case, although an administrative officer has no duty to go to inordinate length to develop claimant's case, there is no much effort shown to develop the medical evidence on behalf of claimant as adequate to have for its consideration a full and fair record. Rico v. Secretary of Health, Ed. & Welfare, 593 F.2d 431 (1st Cir. 1979).[5] An initial examination of the available record, although not dealing with a Social Security claim herein, claimant in the present case should have been allowed, before initial denial of her claim, to a more adequately developed record, as well as an assurance by defendant, which it denied to plaintiff before the filing of this action, that it had preserved all documents for consideration of the Court. Although disputed by defendant, there is annotation on the record showing the medical evidence submitted by claimant was considered difficult to read or in the Spanish language, without an opportunity or request to supplement same or provide a more legible copy or translation. These omissions raised an initial concern as to the adequacy of a judgment as a matter of law more so when no administrative review was subsequently available to the claimant. The administrative appeal which was submitted to the denial of the initial claim was never processed and no denial of the appeal was ever issue or notified to claimant González-López. The absence of a properly developed administrative record at first glance impinged on an initial finding that there was substantial evidence in support of the administrative decision, more so upon plaintiff's claim, without defendant's denial, of having continued to make payments on the insurance up to the year 2005.

   Still, under the arbitrary and capricious standard for reviewing on the administrative record a denial of ERISA benefits, the decision must be upheld if there is any reasonable

---

[5] Because Social Security proceedings are considered not adversarial in nature, there is a duty to develop an adequate record from which a reasonable conclusion may be drawn. Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991).

María del Pilar González López v. CIGNA, et al
Civil No. 08-1294(JAG/CVR)
Opinion and Order
Page No. 15

---

basis for it. A court will thus uphold the administrator's decision to deny benefits under ERISA if the decision was reasoned and supported by substantial evidence, that is, the evidence on record be reasonably sufficient to support a conclusion and any contrary evidence does not make the decision unreasonable. Tsoulas v. Liberty Life Assurance Co. of Boston, 454 F.3d 69, 76 (1st Cir. 2006). *See* Madera v. Marsh USA, Inc., 426 F.3d 56, 64 (1st Cir. 2005); *see also* Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 32 (1st Cir. 2007).

Likewise, under the deferential standard, the administrator's decision or fiduciary is considered reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228 (4th Cir. 1997). Thereunder, judgment as matter of law may be granted only if the evidence, adumbrates a result as to which reasonable minds could not differ, provided the court has not passed upon the credibility of the witnesses, resolve evidentiary conflicts nor engage in a comparative weighing of the proof. *See* Wagenmann v. Adams, 929 F.2d at 200; Veranda Beach Club Ltd. P'ship v. W. Sur. Co., 936 F.2d 1364, 1383 (1st Cir. 1991); Hubbard v. Faros Fisheries, Inc., 626 F.2d 196, 199 (1st Cir. 1980); *see also* Mildred Martinez-Serrano v. Quality Health Services of P.R., Inc., slip op. No. 08-1127 (1st Cir., June 8, 2009).

Although plaintiff had rested its position as a summary judgment motion claiming controversy of facts and being entitled as a non-movant to inferences in its favor, upon reconsideration requested by defendant Life Insurance the standard to be applied to an ERISA case varies. In disposition of this type of ERISA cases, a district court sits more as

an appellate tribunal than as a trial court. Summary judgment in such content is simply a vehicle for deciding the issue and thus, the non-moving party is not entitled to the usual inferences in its favor. Leahy v. Raytheon Co., 415 F.3d at 18.

This United States Magistrate Judge is still concerned with the scarce developed record with unverified information which was within the easy access of the administrators regarding the duties of the position, as well as the notes from the physician which were considered difficult to read and in the Spanish language but no clarification was sought, in the absence of an administrative appeal. *See* Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005) (stating there was no claim plaintiff was denied an opportunity to present evidence to the administrator, had ample time to collect records and had two administrative appeals reviews of his claim).

Nevertheless, plaintiff may not be relieved of his/her burden of proving he/she is disabled under summary judgment standards wherein all inferences are drawn against the movant. Rather, the Court of Appeals for the First Circuit has rejected said argument. In Liston v. Unum Corp., 330 F.3d 19, 24 (1st Cir. 2003), review of an administrator's decision to deny benefits was limited to determining whether administrator acted arbitrarily and capriciously. *See* Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 12 (1st Cir. 2003); Lopes v. Metro Life Ins. Co. 332, F.3d 1, 4 (1st Cir. 2003); Brigham v. Sun Life of Canada, 317 F.3d 72, 80 (1st Cir. 2003). *See also* Buffonge v. Prudential Ins. Co. Of America, 426 F.3d 20, 28 (1st Cir. 2005).

As indication the record would not show there was an arbitrary and capricious decision in denying benefits to plaintiff, defendant further submitted on reconsideration being uncontested that plaintiff's neurodermatitis condition began in 1994 and she

continued to work with same condition up to June 12, 1997. *Docket No. 59-5, Exhibit C, Part 2, p. 79, Part 3, p. 124.* Plaintiff did not visit her psychiatrist, Dr. José Villanueva between May 20, 1997 and June 24, 1997, having thus no record of an alleged emotional condition at the time. By June 24, 1997, her neurodermatitis had improved. *Docket No. 59-5, Exhibit C, Part 2, p. 85; Docket No. 66, Exhibit 2, p. 7.* Plaintiff referred on said date the lesions in her hands and feet had disappeared. *Docket 59-5, Exhibit C, Part 2, p. 85.* By July 15, 1997, Dr. Villanueva reported plaintiff was happy, her hands and feet were in perfect condition and her dermatologist had discharged her. *Docket No. 59-5, Exhibit C, Part 2, p. 85; Docket No. 66, Exhibit 2, p.7.* Additionally, plaintiff did not visit Dr. Juan Félix, her orthopedist, from May 13 up to June 26, 1997, as per the attending physician's statement of disability and there is no record of visits for such dates. *Docket No. 59, Exhibit C, Part 2, p. 61.* Defendant thus submits that Dr. Félix – who failed to submit office notes although requested– although identifying plaintiff's injury as of April 8, 1997 (although she continued to work after that date) failed to indicate how the neurodermatitis condition aggravated around June 12, 1997. *Id.*

In consideration of the above discussed, the issues raised by defendant as supported by the administrative record, the applicable jurisprudence to this ERISA claim and the absence of plaintiff's reply or opposition, defendant's motion for reconsideration is well taken, and the Motion for Judgment as a Matter of Law and/or for Summary Judgment on the Administrative Record filed is GRANTED. (Docket Nos. 59, 72).

## CONCLUSION

Thus, upon reconsideration, the Motion for Judgment as a Matter of Law and/or for Summary Judgment is GRANTED.

Judgment to be entered dismissing the complaint.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 6th day of August of 2009.

                         s/**CAMILLE L. VELEZ-RIVE**
                         **CAMILLE L. VELEZ-RIVE**
                         **UNITED STATES MAGISTRATE JUDGE**